**Heriberto RODRIGUEZ, Carlos Flores, Erick Nunez, Juan Carlos Sanchez and Juan Trinidad, Plaintiffs,**

v.

**COUNTY OF LOS ANGELES, et al., Defendants.**

Case No. 10–6342–CBM (AJWx).

United States District Court, C.D. California.

Signed Dec. 26, 2014.

Filed Dec. 29, 2014.

Caitlin S. Weisberg, David S. McLane, Kevin J. Lahue, Ronald O. Kaye, Kaye McLane Bednarski and Litt LLP, Pasadena, CA, James S. Muller, Law Offices of James S. Muller, Glendale, CA, for Plaintiffs.

David D. Lawrence, Daniel S. Cha, Dennis Michael Gonzales, George E. Morris, Jr., Jin S. Choi, Paul B. Beach, Lawrence Beach Allen and Choi PC, Glendale, CA,

**1015**

Gilbert M. Nishimura, J. Edwin Rathbun, Jr., Seki Nishimura and Watase LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

CONSUELO B. MARSHALL, District Judge.

Before the Court is Plaintiffs' Corrected Motion for Attorneys' Fees (the "Motion"). (Dkt. No. 668.) This matter is fully briefed and was taken under submission without oral argument.

## I. JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343(3), and 1367.

## II. FACTUAL AND PROCEDURAL OVERVIEW

Heriberto Rodriguez, Eric Nunez, Juan Carlos Sanchez, Juan Trinidad, and Carlos Flores (collectively "Plaintiffs") were prisoners at the Men's Central Jail ("MCJ") in Los Angeles, California when they were involved in a violent conflict with prison guards and officials in the jail. During this conflict, MCJ guards attempted to extract Plaintiffs from their jail cells using excessive force, including using Tazers for extended periods targeting Plaintiffs' sensitive body parts. The result of this conflict left the Plaintiffs seriously injured. On August 25, 2010, Plaintiffs brought a civil rights action against numerous Defendants, including the County of Los Angeles ("COLA"), the Los Angeles Sheriff's De-

partment ("LASD"), and individual guards and supervisors. In their complaint, Plaintiffs alleged that these Defendants violated Plaintiffs' Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("Civil Rights Act" or "§ 1983") and Cal. Civ.Code § 52.1 ("Bane Act" or "§ 52.1").

On November 7, 2013, after four years of litigation and a month-long trial, a jury returned a verdict in favor of each Plaintiff on all causes of action.[1] The jury found that the Plaintiffs were subjected to force that was intentional and excessive and determined that Defendants' actions gave rise to liability under both § 1983 and § 52.1.[2] On February 6, 2014, this Court entered judgment in Plaintiffs' favor consistent with the jury verdict, awarding Plaintiffs $754,000 in compensatory and $210,000 in punitive damages (for a total damage award of $950,000). Plaintiffs now request reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civ.Code § 52.1(h) for their success in litigating this hotly contested prisoners' civil rights case.

## III. PROCEDURAL HISTORY OF THE MOTION

While Defendants' post-trial motions were pending, Plaintiffs filed a Motion for Attorney Fees and Costs, supported by numerous declarations and exhibits.[3] (See Dkt. Nos. 644, 645, 646, 647, 648, 649, 650.) Almost two weeks later, Plaintiffs filed a Corrected Motion for Attorney's Fees and Costs (the "Motion") supported by an additional declaration and exhibits. (See Dkt. Nos. 668, 669.) Defendants filed a timely

---

1. Plaintiffs prevailed on both causes of action against COLA, LASD, and several, but not all, individual defendants.

2. Four of the Plaintiffs asserted liability under both statutes and prevailed on both the § 1983 and § 52.1 claims. Mr. Rodriguez asserted liability only under § 1983 and prevailed on that claim.

3. Plaintiffs' brief exceeded this Court's page limitations. Plaintiffs filed a concurrent ex parte application to exceed page limitations. (Dkt. 643.) The Court later granted Plaintiffs' request to exceed page limitations for the Motion. (Dkt. 655.)

Opposition to the Motion, supported by two declarations and several exhibits. (*See* Dkt. Nos. 678, 679, 680.) Plaintiffs applied *ex parte* to include additional pages in their reply brief, and, without permission of the Court, filed a reply exceeding this Court's page limits by 25 pages; Plaintiffs also filed several additional declarations. (*See* Dkt. Nos. 684, 687, 688, 689, 690.) The Court granted Plaintiffs' ex parte request for additional pages, but limited Plaintiffs to five additional pages for their reply. (Dkt. No. 700.) Plaintiffs then filed a reply within this Court's page limits. (Dkt. No. 702.)

Without permission of the Court, Defendants filed another opposition to Plaintiffs' Motion, opposing the additional fees requested in Plaintiffs' reply brief. (Dkt. No. 697.) Defendants then filed "Supplemental Authority in Support of Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees and Costs," which included further argument opposing the Motion. (Dkt. No. 705.) Plaintiffs filed a response to Defendants' "Supplemental Authority" and offered additional arguments supporting Plaintiffs' Motion. (Dkt. No. 706.) A few weeks later, Plaintiffs filed three more documents all containing additional arguments: a "Supplement," an Application for Leave to File Supplemental Briefing, and a declaration with exhibits introducing new (but previously available) evidence. (Dkt. Nos. 708, 709, 710.) Plaintiffs then filed a document labeled a "Notice of Errata" that proffered additional arguments and requested a larger fee. (Dkt. No. 712.)

The parties' excessive filing of documents related to Plaintiffs' Motion caused delay in the issuance of this order. The Court finds that both parties violated the local rules by filing documents after briefing was completed without permission of the Court and by filing appendices containing excessive, and improper, legal arguments. *See* L.R. 7–3 ("A party filing any

document in support of, or in opposition to, any motion noticed for hearing as above provided after the time for filing the same shall have expired ... shall be subject to the sanctions of L.R. 83–7 ..."); *see also* L.R. 7–7 ("Declarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of Fed.R.Civ.P. 56(c)(4)"; *see also* L.R. 11–6 ("appendices shall not include any matters which properly belong in the body of the memorandum of points and authorities."). For purposes of ruling on this Motion, the Court considers only the legal arguments made in Plaintiffs' Motion, Defendants' Opposition, and Plaintiffs' fifteen-page Reply. (Dkt. Nos. 668, 678, 702.) The Court also considers the timely evidence offered in support thereof. (Dkt. Nos. 645, 646, 647, 648, 649, 650, 669, 679, 680, 688, 689, 690, 692.)

## IV. LEGAL STANDARD

### A. Lodestar Analysis

 A plaintiff that prevails in civil rights litigation under federal law (§ 1983) or state law (§ 52.1) may be entitled to an award of attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Chavez v. City of Los Angeles*, 47 Cal.4th 970, 989, 104 Cal.Rptr.3d 710, 224 P.3d 41 (2010). For a plaintiff that prevails on a § 1983 claim, fees may be awarded fees pursuant to 42 U.S.C. § 1988 ("§ 1988"). Once a plaintiff establishes that it is the "prevailing party," a reasonable fee award is typically based upon the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Reasonable hours are those hours that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a success-

ful recovery." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir.2003) (citing *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir.1989)). A "reasonable rate" may be demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001). Lodestar analysis is generally the same under California law and Federal law.

### B. PLRA—Fees Awarded under Federal Law Claims

Congress has adopted special standards and limitations on attorney's fees for prevailing plaintiffs seeking monetary damages authorized by 42 U.S.C. § 1988 when the prevailing plaintiff is a prisoner, as in this case. *See* Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Under the PLRA, attorney's fees can be awarded only if "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988." 42 U.S.C. § 1997e(d)(1)(A). The fee must be "proportionally related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered." 42 U.S.C. § 1997e(d)(1)(B). Up to 25 percent of any monetary award a prison plaintiff receives pursuant to § 1988 must be applied as a part of fee awarded to counsel (the plaintiff's "PLRA contribution"). 42 U.S.C. § 1997e(d)(2).

■■ As interpreted by the Ninth Circuit, attorney's fees which are subject to the PLRA are capped at 150% of the judgment awarded to prisoner plaintiffs. *See Woods v. Carey*, 722 F.3d 1177, 1180 (9th Cir.2013) (holding that prisoner plaintiffs' attorneys fees are capped at 150% of the judgment, but that appellate work is not subject to the PLRA cap); *see also Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir.2003) (holding that prisoner plaintiffs' attorneys fees are capped at 150% of the judgment, but where plaintiffs obtain injunctive relief their fees are not subject to the PLRA cap). The hourly rate for fees subject to the PLRA are also capped, and cannot exceed 150% of the authorized hourly rate for court-appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"). 42 U.S.C. § 1997e(d)(3); *see Webb v. Ada Cnty.*, 285 F.3d 829, 839 (9th Cir.2002). The maximum rate established by the PLRA is the same for paralegals and other non-attorney billers as it is for attorneys. *Perez v. Cate*, 632 F.3d 553, 558 (9th Cir.2011) ("[T]he PLRA limits courts to an hourly rate that is 150 percent of the rate established for court-appointed counsel under the Criminal Justice Act and does not set a separate benchmark rate for paralegal fees.").

### C. Cal. Gov.Code § 52.1(h)—Fees for State Law Claims

Plaintiffs who prevail on a claim under California Civil Code § 52.1 are entitled to attorneys' fees pursuant to Cal.Civ.Code § 52.1(h). The Ninth Circuit has held that it is proper to use state law to determine an attorney's fee where there are overlapping federal and state civil rights claims and state law provides a greater award

than does federal law. *See Mangold v. California Pub. Utilities Comm'n,* 67 F.3d 1470 (9th Cir.1995). Further, in the Ninth Circuit, "when a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available." *See Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1106 (9th Cir.2014) (holding that "[i]f the Estate had prevailed on its § 52.1 claim, [as opposed to just a § 1983 claim] it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation.") (internal citation omitted).

## V. DISCUSSION

It is undisputed that Plaintiffs prevailed at trial and are entitled to fees as "prevailing parties." The Court must now determine a "reasonable" fee consistent with state and federal law and within the limitations of the PLRA.

### A. Fees Payable Pursuant to State and Federal Law

■ Plaintiffs prevailed on their civil rights claims under both the California Bane Act (§ 52.1) and under federal Civil Rights Act (§ 1983). While these statutes have their own fee provisions, Defendants argue that all attorney's fees must be awarded pursuant to § 1988 because the Bane Act's attorney's fees provision conflicts with a valid federal statute (the PLRA). The Court finds no such conflict in the law and finds that Plaintiffs may be paid pursuant to § 52.1(h) for their success on § 52.1 claims.

The PLRA is expressly limited to claims challenging "prison conditions under section 1983 … or any other Federal law." 42 U.S.C. § 1997e(a). PLRA attorneys' fee restrictions specifically apply to fees payable "under section 1988." 42 U.S.C. § 1997e(d); *see Armstrong,* 318 F.3d at 975 (holding that the PLRA applies only to fees paid pursuant to § 1988); *see also Beckford v. Irvin,* 60 F.Supp.2d 85, 88

(W.D.N.Y.1999) ("The PLRA does not limit the award of attorney's fees to a prevailing plaintiff whose award is authorized under a statute separate from § 1988.") The Ninth Circuit has clearly held that the PLRA restrictions need not apply where a statute independently provides for attorney's fees and fees are not awarded pursuant to § 1988. *Armstrong* 318 F.3d at 975.

When there is a state law cause of action in a federal court, courts recognize that "a state right to an attorney's fee reflects a substantial policy of the state" and "the method of calculating a fee is an inherent part of the substantive right to the fee itself…" *Mangold,* 67 F.3d at 1479 ("The trial court did not err in applying state law to calculate the fees available under state law."). It is well established that this Court may award fees pursuant to state law for state law claims. *Id.; see also Chaudhry,* 751 F.3d at 1106 (finding that if the plaintiff prevailed on § 52.1 and § 1983 claims based on the same conduct, the plaintiff could pursue attorney's fees pursuant to § 52.1(h)).

Defendants argue an unpublished order from this district, *Pierce v. County of Orange,* is "on all fours" with the matter now before this Court and, therefore, Plaintiffs may only recover fees pursuant to federal law. However, in *Pierce,* the Court determined that the PLRA rate cap limited the attorney's fees available under state law (Cal. Civil Code § 1021.4) because the plaintiffs' state and federal constitutional claims were not separately discussed or adjudicated by the Court (or the Ninth Circuit on remand) and all constitutional claims were remanded as a violation of § 1983. (*See* Defendants' Ex. 1, p. 34–35 (Dkt. No. 679).) Here, Plaintiffs prevailed on separate state and federal causes of action pursuant to separate state and federal statutes. The jury found Defendants liable under § 1983 and § 52.1 in

separate jury findings.[4] (Dkt. Nos. 595, 597, 599, 601.) Further, unlike in *Pierce*, Plaintiffs' request for fees distinguishes between hours sought for § 1983 claims and hours sought for § 52.1 claims. Defendants' reliance on *Pierce* is not persuasive.

Further, the Ninth Circuit has found that Congress, in passing the PLRA, did not intend to discourage the collection of fees in the "extremely small percentage" of meritorious cases with substantial verdicts in favor of prisoner plaintiffs. *Woods*, 722 F.3d at 1182 & n. 5. Congress instead sought to limit the number of frivolous prisoner claims filed and to encourage early dismissal of such lawsuits. *Id.* The lawsuit before this Court was not a frivolous prisoner lawsuit. Plaintiffs' lawsuit was meritorious and required competent counsel. Limiting Plaintiffs' state law fee pursuant to the PLRA would not serve Congress's intent and would not compensate counsel for Plaintiffs' successful California law claims.

Plaintiffs are entitled to attorney's fees pursuant to California law for their successful California law claims and pursuant to federal law (limited by the PLRA) for their successful federal claims.

### (i) Distinguishing Fees Pursuant to State or Federal Law .

The next issue the Court must determine is what portion of counsels' fee should be awarded pursuant to § 1988, subject to the limitations of the PLRA, and what portion should be awarded pursuant to § 52.1(h). This is a complex task because, as noted by the Supreme Court, in civil rights litigation "[m]uch of counsel's time will be devoted generally to the litiga-

tion as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Differentiation is particularly difficult here, where Defendants were found liable for both state and federal claims based on the same facts (an underlying Eighth Amendment excessive force violation).

Plaintiffs request over 5,500 hours of billable work on the merits of this litigation through February 28, 2014.[5] Plaintiffs request 1260.4 hours exclusive to the § 1983 claims (to be awarded pursuant to § 1988) and 4412.8 hours for services relevant to Plaintiff's state law claims (to be awarded pursuant to § 52.1(h)). (*See* Declaration of Barrett S. Litt in support of Corrected Motion for Attorney Fees and Costs ("Litt Decl.") ¶ 30 (Dkt. No. 669).) Plaintiffs provide evidence that counsel conducted a careful analysis and categorized each time entry in their billing records for the past four years. (*See* Declaration of Caitlin Weisberg in Support of Motion for Attorney Fees and Costs ("Weisberg Decl.") (Dkt. No. 650.) Based on Attorney Weisberg's review of over 3,700 individual billing records, Plaintiffs' attorneys determined that approximately 22% of the time worked on this case was spent exclusively on Plaintiffs' federal claims and should be awarded under § 1988 ("§ 1983 only" time). Plaintiffs argue that the other 78% of the time was either devoted to Plaintiffs' state law claims or was entwined with Plaintiffs' state law claims, and fees for those hours should be awarded pursuant to § 52.1(h).

The time Plaintiffs classified as "§ 1983 only" includes time exclusive to 1) Plaintiff

---

**4.** Defendants were only held liable under § 1983 as to Plaintiff Rodriguez.

**5.** According to Attorney Weisberg, "merits hours" refer to all hours excluding hours spent on Plaintiffs' motion for sanctions for

Defendants' failure to comply with the Court's discovery orders, hours spent on Plaintiff's fee motion, and hours spent litigating the interlocutory appeal in the Ninth Circuit. (*See* Weisberg Decl., ¶¶ 6–7.)

Rodriguez (who had only a federal claim); 2) Plaintiffs' *Monell* claim; [6] 3) qualified immunity issues; and 4) issues relating to attorney's fees under the PLRA. (Weisberg Decl. ¶ 7.) For billing entries that had "cross-over utility" for both Plaintiffs' state law and federal law claims, Plaintiffs determined a percentage of the time which should be considered "§ 1983 only." This percentage ranged from one hundred percent "1983 only," to time entries which benefitted both Plaintiffs' § 1983 and § 52.1 claims but of which counsel considered only 5%–60% was work exclusive to Plaintiffs' § 1983 claims. (Weisberg Decl. ¶ 8–10.)

### (ii) Defendants' Challenges to Plaintiffs' Apportionment

Defendants raise several challenges to Plaintiffs' requested apportionment and argue that some work classified by Plaintiffs as pertinent to Plaintiffs' state law claims should be classified as "§ 1983 only."

▮ Plaintiffs request approximately 50% of their time opposing Defendants' motion for summary judgment as payable pursuant to state law. The Court finds that Defendants' Summary Judgment motion focused predominantly on qualified immunity and Plaintiffs' Monell claim— neither of which are applicable under California law or entwined with Plaintiffs' § 52.1 claims. Accordingly, the Court finds that the majority of the services rendered on Plaintiffs' opposition to the summary judgment motion should be paid pursuant to § 1988 as "§ 1983 only" time. Because Plaintiffs do not distinguish the hours or the fee specific to their opposition to summary judgment and the Court has no other means of calculating an appropriate reduction, the Court therefore adopts Defendant's adjusted fee for services ren-

dered opposing the summary judgment motion ($57,075.00). (*See* Declaration of Robert M. Bruning in Support of Defendants' Opposition to Plaintiffs' Attorney's fees and Costs ("Bruning Decl."), Ex. C, p. 2 (Dkt. No. 680).) Plaintiffs' final fee will therefore be reduced by $84,479.10, reflecting the difference between Plaintiffs' requested fee for opposing Defendants' Motion for summary judgment ($141,554.10) and Defendants' adjusted amount ($57,075.00). (*Id.*)

▮ The Court finds Defendants' additional challenges to Plaintiffs' requested apportionment unpersuasive. Plaintiffs provide adequate evidence supporting the apportionment of fees between state and federal law and counsel's exercise of careful billing judgment. It would be unreasonable for this Court to determine, without specific rebuttal evidence, that Plaintiffs' success under § 52.1 can be attributed to only 25% of their work (despite Defendants' request that the Court do so). Defendants' request that fees be apportioned such that 75% of Plaintiffs' fee is payable pursuant to § 1988 and 25% pursuant to § 52.1 is unsupported and would not compensate Plaintiffs for their success on state law claims. "Defendants fail to meet their "burden of rebuttal;" which requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Chaudhry*, 751 F.3d at 1110 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008)). The Court finds that Plaintiffs' requested apportionment is reasonable with a reduction to more accurately reflect the classification of hours spent opposing Defendants' summary judgment motion.

---

**6.** Plaintiffs' *"Monell* claim" refers to Plaintiffs' § 1983 claims against COLA and LASD based on *Monell v. Dept. of Soc. Svcs.*, 436

U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## B. Lodestar Analysis

### 1. Reasonable Rates Under PLRA

For the 1260.4 hours that Plaintiffs' counsel worked exclusively on § 1983 claims, Plaintiffs request reasonable rates that comply with the PLRA cap. Plaintiffs base their request on the publicly available Criminal Justice Act ("CJA") hourly rates which are as follows:

| § 230.16(a) Non-capital Hourly Rates | |
| --- | --- |
| **If services were performed between. . .** | **The maximum hourly rate is. . .** |
| 03/01/2014 to present | $126 |
| 09/01/2013 through 02/28/2014 | $110 |
| 01/01/2010 through 08/31/2013 | $125 |
| 03/11/2009 to 12/31/2009 | $110 |
| 01/01/2008 through 03/10/2009 | $100 |
| 05/20/2007 through 12/31/2007 | $94 |
| 01/01/2006 through 05/19/2007 | $92 |
| 05/01/2002 through 12/31/2005 | $90 |

For fees paid pursuant to § 1988 Plaintiffs request an hourly rate capped at $189 per hour, a rate based on 150% of the rate paid to court-appointed attorneys in this district (150% of $126). Plaintiffs request this rate for their attorneys as well as for some non-attorney billers. *See Perez*, 632 F.3d at 555 (holding that the PLRA cap is the same for attorneys and paralegals).

Plaintiffs' requested rates for all of their attorneys and staff on this matter for fees paid pursuant to § 1988 are as follows:

| § 1988 / PLRA Fees | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Attorney/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee /Cost) [7]** | **Total** |
| Barry Litt | 45 (1969) | $189 | 18.9 | 7.7 | $5,027.40 |
| Ronald Kaye | 26 (1988) | $189 | 373.0 | 6.2 | $71,668.80 |
| David McLane | 28 (1986) | $189 | 177.0 | 0.9 | $33,623.10 |
| James Muller | 28 (1986) | $189 | 211.5 | 3.2 | $40,578.30 |
| Kevin LaHue | 10 (2004) | $189 | 134.2 | .3 | $25,420.50 |
| Caitlin Weisberg | 6 (2008) | $189 | 159.2 | 4.7 | $30,977.10 |
| Julia White | Sr. Paralegal | $189 | 47.4 | 25.9 | $13,853.70 |
| Veronica Aguilar | Paralegal | $175 | 5.7 | 0 | $997.50 |
| Heath White | High tech paralegal | $189 | 6.3 | 0 | $1,190.70 |
| Lisa Mikhailova | Paralegal/Legal Asst. | $175 | 24.1 | .7 | $4,340.00 |
| John Srebalus | Paralegal/Legal Asst. | $175 | .3 | 0 | $52.50 |
| Vi Hohuynh | Law Clerk | $189 | 102.8 | 0 | $19,429.20 |
| **SUBTOTAL:** | | | 1260.4 | 49.6 | $247,758.80 |
| **SUBTOTAL AFTER 3% REDUCTION:[8]** | | | | | 239,744.04 |
| **Plaintiffs' PLRA Contribution:** | | | | | -$9,500 |

**7.** Hours listed as "Fee/Cost" hours are those hours spent working on the fee motion and on the bill of costs. (*See* Dkt. No. 669, ¶ 44.)

**8.** To account for any inaccurate or duplicative billing, Plaintiffs implemented an across-the-board three percent deduction on all fees awarded pursuant to both § 1988 and § 52.1(h).

**TOTAL:** **$230,244.04**

Nearly a month after this Motion was taken under submission, Plaintiffs filed a "Notice of Errata" and requested supplemental briefing to argue for an increase in Plaintiffs' requested rates for their "§ 1983 only" work. (Dkt. 709, 710, 712, 713.) The Court acknowledges that the maximum rate established under the PLRA is based on the "authorized" CJA rates, and not the "funded" CJA rates. *Webb*, 285 F.3d at 839. However, the Court finds that Plaintiffs' requested rates ($175–$189) do not violate the attorney's fee rate cap established by the PLRA and these rates result are reasonable and were used by the Court in calculating a reasonable fee.

### 2. Reasonable Rates Under 52.1(h) (Not Subject to PLRA Cap)

Plaintiffs' requested rates and hours for their non-PLRA capped hours, the hours attributable to their § 52.1 claims, are as follows:

| § 52.1(h) Fees | | | | | |
|---|---|---|---|---|---|
| Atty/Biller | Yrs Practice (Grad Date) | Rate | Hours (Merits) | Hours (Fee /Cost) [9] | Total |
| Barry Litt | 45 (1969) | $975 | 37.4 | 27.2 | $62,985.00 |
| Ronald Kaye | 26 (1988) | $775 | 1077.9 | 21.9 | $852,345.00 |
| David McLane | 28 (1986) | $775 | 429.2 | 3.3 | $335,187.50 |
| James Muller | 28 (1986) | $700 | 946.4 | 11.5 | $670,530.00 |
| Kevin LaHue | 10 (2004) | $600 | 448.2 | 1.2 | $269,640.00 |
| Caitlin Weisberg | 6 (2008) | $500 | 458.9 | 16.8 | $237,850.00 |
| Julia White | Sr. Paralegal | $295 | 155.7 | 92.0 | $73,071.50 |
| Veronica Aguilar | Paralegal | $175 | 77.5 | 0 | $13,562.50 |
| Heath White | High Tech Paralegal | $235 | 80.0 | 0 | $18,800.00 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 218.5 | 2.5 | $38,675.0 0 |
| John Srebalus | Paralegal / Legal Asst. | $175 | 16.0 | 0 | $2,800.00 |
| Vi Hohuynh | Law Clerk | $250 | 467.1 | 0 | $116,775.00 |
| SUBTOTAL: | | | 4412.8 | 176.4 | $2,692,221.50 |
| SUBTOTAL AFTER 3% REDUCTION: | | | | | $2,611,454.86 |
| SUBTOTAL WITH 2.0 MULTIPLIER (merits only): | | | | | $5,046,762.56 |
| TOTAL (2.0 Multiplier): | | | | | $5,222,909.72 |

Plaintiffs submit declarations attesting to the reputation, skill and experience of Plaintiffs' counsel. (*See, e.g.,* Declaration of Donald W. Cook in support of Plaintiffs' Motion for Award of Attorney's Fees ("Cook Decl.") (Dkt. No. 649); Declaration of William J. Genego in Support of Plaintiffs' Motion for Award of Attorney's Fees (Dkt. No. 649–1).) Plaintiffs also submit declarations from Carol Sobel and Barrett S. Litt demonstrating comparable attorneys' fee rates in this District for attorneys with similar experience to Plaintiffs' counsel. (Declaration of Carol Sobel in

---

**9.** As explained in The Corrected Declaration of Barrett S. Litt in Support of Plaintiffs' Motion for Award of Attorneys' Fees, hours listed as "Fee/Cost" hours are those hours spent working on the fee motion and on the bill of costs. (*See* Dkt. No. 669, ¶ 44.)

Support of Plaintiffs' Motion for Attorey's Fees ("Sobel Decl.") (Dkt. No. 648); Litt Decl.)

Plaintiffs provide evidence that Barrett S. Litt, who served predominantly in a consulting role on this case, is considered one of the leading civil rights attorneys in the country. (*See* Sobel Decl. ¶ 10.) Plaintiffs' requested rate of $975 per hour for Attorney Litt is supported by his strong reputation and experience.

Ronald O. Kaye was lead counsel for Plaintiffs. The Court is familiar with Attorney Kaye from his practice at the Federal Public Defenders and through observing him during the course of this litigation. Plaintiffs have submitted several declarations attesting to Attorney Kaye's outstanding reputation, skill, and experience. (*See, e.g.,* Declaration of Sean Kennedy in Support of Plaintiffs' Motion for Award of Attorney's Fees (Dkt. No. 649–3); *see also* Declaration of Samuel Paz in Support of Plaintiffs' Motion for Award of Attorney's Fees (Dkt. No. 649–4).) Attorney Kaye has been engaged in the practice of civil rights law for the past ten years and has extensive criminal trial experience. The Court finds his requested rate of $775 is reasonable and supported by evidence.

This Court is familiar with David S. McLane from his past appearances before this Court as a Federal Public Defender and through observing his work on this case. Plaintiffs submitted declarations attesting to Attorney McLane's outstanding reputation, skill, and experience in criminal defense and more recently in civil rights litigation. (*See, e.g.,* Declaration of Brian A. Vogel in Support of Plaintiff's Motion for Award of Attorney's fees (Dkt. No. 649–6).) Attorney McLane has been engaged in the practice of civil rights law for the past ten years and has many years of criminal trial experience. The Court finds his requested rate of $775 is reasonable and supported by the evidence.

James S. Muller has been practicing law for 28 years with a focus in the area of police misconduct. Plaintiffs submitted declarations attesting to his skill, experience and reputation. (*See, e.g.,* Declaration of Carol A. Watson in Support of Plaintiffs' Motion for Award of Attorney's Fees (Dkt. No. 649–7); Sobel Deck. ¶ 11.) The Court finds the requested $700 per hour reasonable based on the evidence presented.

The Court similarly finds the requested rates of $600 for Kevin LaHue (2004 graduate), $500 for Caitlin Weisberg (2008 graduate), and the requested paralegal/law clerk rates of $295 to $175 reasonable based on the evidence presented in the Sobel and Litt Declarations.

In the Ninth Circuit, reasonable rates for civil rights cases are not based only on rates offered in similar civil rights claims but rather comparison "extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir.2009) (holding that "the proper scope of comparison is not so limited" as to only other attorneys involved in prison litigation). Plaintiffs provide evidence and case law that their requested rates are comparable to other attorneys in Los Angeles with comparable skill and experience in other complex litigation. (*See* Litt Decl.). The Court finds that this litigation was complex and counsel represented Plaintiffs with noticeable skill and professionalism. Plaintiffs' requested rates are reasonable.

### 3. Reasonable Hours

██ "By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry,* 751 F.3d at 1111 (quoting *Mor-*

*eno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir.2008)). Courts generally accept the reasonableness of hours supported by declarations of counsel. *See, e.g., Horsford v. Bd. of Trustees of Cal. State Univ.,* 132 Cal.App.4th 359, 396, 33 Cal.Rptr.3d 644 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.")

Counsel's sworn declarations and attached time records evidence the attorney, paralegal, and law clerk hours spent in this litigation. (*See* Weisberg Decl., Exs. A, B.; *see also* Litt Decl. ¶¶ 30–31, 47–48; Declaration of Ronald O. Kaye in Support of Motion for Attorney's Fees ("Kaye Decl.") ¶¶ 5–9, 12, 17–18 (Dkt. No. 646); Declaration of James Muller in Support of Motion for Attorney's Fees ("Muller Decl.") ¶¶ 18–23 (Dkt. No. 647).) Prior to requesting fees, to account for any arguable duplication, counsel applied a 3% across the board reduction of hours. In total, Plaintiffs request 5,899.2 hours (adding both merits and fee hours requested under state and federal law). The Court finds that Plaintiffs' requested hours are reasonable and supported by counsel's verified statements.

#### (i) Muller Pre–Trail Work

Attorney Muller, who began as the sole attorney for Plaintiffs, submitted billing entries totaling 55.30 hours for a two-year period prior to the filing of the August 25, 2010 complaint. Defendants argue that these hours are unjustified and that 48.0 of these hours pertained to an unrelated class-action matter in state court. Upon a review of the evidence, the Court finds that Muller's pre-trial work was related to this case and Muller's hours spent were reasonably expended.[10]

#### (ii) Deposition Attendance

Defendants challenge hours for duplicative attendance at six depositions, totaling an excess of 35.4 hours. The Court finds, because this case involved several Plaintiffs and Defendants and two Plaintiffs' law firms, it is reasonable that more than one Plaintiffs' attorney was present at depositions. A second attorney may serve as a sounding board or be necessary to assure that valuable testimony (for all Plaintiffs) is obtained during the limited time allotted in deposition. *See Moreno,* 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"). The Court, therefore, does not reduce Plaintiffs' requested fee based on duplicative attendance at depositions.

#### (iii) "Unsuccessful" Claims

The Court may fully compensate for work that is "expended in pursuit of the ultimate result achieved" even where "the plaintiff failed to prevail on every contention raised in the lawsuit." *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Dang v. Cross,* 422 F.3d 800, 813 (9th Cir.2005). Defendants argue that Plaintiffs' hours should be reduced because some individual Defendants were dismissed or prevailed at trial and because Plaintiffs did not succeed on all motions.

---

**10.** In their reply brief and supporting declarations, Plaintiffs acknowledge that 4.8 hours requested by Plaintiffs in the Motion could have been excluded from their requested hours. (*See* James S. Muller in Support of Corrected Motion for Attorney Fees ("Muller Reply Decl."), (Dkt. No. 689); *see also* Declaration of Caitlin S. Weisberg in Support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Award of Attorney's Fees ("Weisberg Reply Decl.") (Dkt. No. 692), ¶ 6.) However, Plaintiffs preemptively applied a 3% reduction to all of their hours, and this reduced Plaintiffs' request by significantly more than 4.8 hours. An additional reduction by this Court is therefore not necessary.

Plaintiffs are not required to succeed on all claims against all Defendants to demonstrate full success or excellent results. *See Dang,* 422 F.3d at 813. The correct analysis hinges on whether Plaintiffs' work pertaining to unsuccessful motions or non-liable Defendants was work related to Plaintiffs' ultimate success. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Chavez,* 47 Cal.4th at 989, 104 Cal.Rptr.3d 710, 224 P.3d 41. Here, Plaintiffs succeeded on all claims, and the hours requested that pertain to unsuccessful motions and non-liable Defendants directly relate to Plaintiffs' successful claims. Plaintiffs may therefore recover a fully compensatory fee. *See id.*

### (iv) Travel Time

 Reasonable travel time by the attorney is compensable, at full rates, if that is the practice in the community. *See Suzuki v. Yuen,* 678 F.2d 761, 764 (9th Cir.1982) ("calculation of fees for prevailing civil rights plaintiffs is to be the same as in traditional fee arrangements and that all reasonable time spent is to be compensated"). In Los Angeles, the practice is to compensate at full rates for travel time, even in CJA cases. (*See* Declaration of Ronald O. Kaye in Support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Award of Attorneys' Fees ("Kaye Reply Decl.") ¶ 13.) Plaintiffs also provide testimony that time was only billed for travel necessary for the proper representation of the client, such as for court appearances and depositions. (Declaration of Barrett S. Litt in Support of Plaintiffs' Reply to Defendants' Opposition to Motion for Attorneys' Fees ("Litt Reply Decl.") ¶ 30.) The Court finds that Plaintiffs' request for counsel's travel time is reasonable.

### C. Lodestar "Multiplier"

 Plaintiffs request a 2.0 multiplier to compensate counsel for excellent work and for the risk counsel assumed in litigating Plaintiffs' case. "The purpose of a fee enhancement, or multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights ... into line with incentives ... they are paid on a fee-for-services basis." *Ketchum,* 24 Cal.4th at 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735. California courts consider the following "*Ketchum* factors" when determining if a lodestar enhancement is warranted: (1) the novelty and difficulty of the questions involved; (2) the skill counsel displayed in litigating the issues; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award. *Id.* Enhancements, or multipliers, are "intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Id.* at 1138, 104 Cal. Rptr.2d 377, 17 P.3d 735. Courts may also consider factors such as the source from which the fee will be paid when determining whether or not to apply a lodestar multiplier. *Serrano v. Priest,* 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977).

 The Court finds that Plaintiffs' requested multiplier is justified based on the financial risk Plaintiffs' counsel assumed in litigating this case on a contingency basis, the difficulty of this case, and based on counsel's demonstrated skill. To litigate this case, counsel invested $3.4 million in services rendered and incurred substantial costs, without any interim payments from the Plaintiffs. Counsel faced substantial obstacles to success, including representing Plaintiffs that were routinely described as the "worst of the worst" prisoners who were challenging the actions of highly ranked Sheriff's office officials and supervisors (including the former Captain and

Sergeants in MCJ). Further, in litigating this case for several years, through a jury trial, was unable to accept other cases. Plaintiffs faced aggressive opposition. In working to secure Plaintiffs' civil rights, counsel faced a serious risk of receiving no payment for their performance of thousands of hours of work over four years. Counsel also risked obtaining no reimbursement for their sizeable financial investment. This Court, accordingly, finds that a multiplier is justified to fully compensate Plaintiffs' counsel for litigating this difficult civil rights lawsuit.

■ The Court has considered the fact that the cost of this litigation will "fall on the shoulders of California taxpayers." *See Nw. Energetic Servs., LLC v. California Franchise Tax Bd.*, 159 Cal.App.4th 841, 881, 71 Cal.Rptr.3d 642 (2008). However, the Court finds that this consideration does not justify reducing the lodestar multiplier. Refusing a multiplier in a civil rights case based only on the source of the fee would "effectively immunize large or politically powerful defendants" engaging in conduct that harms the public. *Horsford v. Bd. of Trustees*, 132 Cal.App.4th 359, 399–401, 33 Cal.Rptr.3d 644 (2005). A 2.0 multiplier will be applied to Plaintiffs' fee for services rendered the merits of this litigation. The Court awards $5,046,762.56 in attorney's fees for Plaintiffs' merits work pursuant to 52.1(h).

## D. PLRA Contribution

■ This jury awarded Plaintiffs $950,000 in judgment. (Dkt. No. 626.) In order to comply with the PLRA attorney's fee restrictions, Plaintiffs request 1% of Plaintiffs' judgment be applied as a contribution to their requested attorney's fee award. Neither the plain language of the statute, nor the legislative history of the attorney fees provisions of the PLRA, provide guidance in determining what percent of the plaintiffs' award should be used to

offset an attorney fee award. However, courts have found that the PLRA contribution should not be a "a rote or mechanical exercise." *Morrison v. Davis*, 88 F.Supp.2d 799, 811 (S.D.Ohio 2000) (finding a PLRA contribution of $1 was not too small "because the case involved "a significant violation of the Plaintiff's rights" and the jury sent a "clear signal that the [d]efendants should be punished""). The Court finds that a 1% contribution ($9,500) is supported by the jury's finding that Defendants' conduct (including malicious violence leaving some Plaintiffs permanently injured) warranted punitive damages.

## E. PLRA Cap

The total judgment in this case, for Plaintiffs success on both $1983 and § 52.1 is $950,000. Accordingly, even if this Court considered half of that judgment ($475,000) to be Plaintiffs' judgment under § 1983, Plaintiffs' requested fee pursuant to § 1988 ($230,244.04) does not violate the PLRA cap.

## F. Cost and Litigation Expenses

On February 20, 2014, Plaintiffs filed an application to the Clerk to tax costs against Defendants. (Dkt. Nos. 629, 632.) Plaintiffs requested a total of $35,313.46 in costs. (Dkt. No. 632.) This application is pending. Plaintiffs request an additional $53,934.77 in costs in this Motion. Plaintiffs are directed to apply for all costs pursuant to Local Rule 54–3. By this Court's order, Plaintiffs may submit an amended application to tax costs with the clerk of the court no later than January 12, 2015.

## VI. PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATION OF EXPERT ROBERT M. BRUNING

■ Plaintiffs move to strike portions of the Defendants' Declaration of Robert

Bruning under Fed.R.Evid. 702 as improper expert testimony. (Dkt. No. 691.) Mr. Bruning declares that he "specialize[s] in acting as an expert witness in matters involving legal fees disputes" and, along with his partner, has reviewed and audited hundreds of cases involving attorney's fee requests. (Bruning Decl. ¶ 2.) However, there is no evidence that Mr. Bruning has any experience specific to civil rights litigation nor that Mr. Bruning has any familiarity with attorney's fees under the PLRA. The Court finds that Mr. Bruning has experience and knowledge qualifying him as an expert in analyzing attorney's fees and billing records, generally. The Court, however, finds that Mr. Bruning is not an expert qualified to opine on the reasonableness of attorney's fees in the civil rights context nor an expert on the PLRA. Further, the legal opinions provided by Mr. Bruning in his declaration are not helpful to the Court and are not properly considered expert testimony under *Daubert. See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir.2011) (holding that an expert's "inference or assertion must be derived by the scientific method" to be admissible). The Court finds that Sections 4(A), 4(B), and 4(C) of Mr. Bruning's declaration are not within his area of expertise and contain analysis of law, not fact.[11] These sections are therefore stricken pursuant to *Daubert.* Additionally, Mr. Bruning's declaration violates the Court's local rules. *See* L.R. 7–7 ("Declarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F.R.Civ.P. 56(c)(4)"; *see also* L.R. 11–6 ("appendices shall not include any matters which properly belong

in the body of the memorandum of points and authorities")). The Court strikes all legal opinions in Mr. Bruning's declaration. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law"). The Court considers only Mr. Bruning's quantification of Plaintiffs' counsel's billing records and the evidence establishing the time Plaintiffs' counsel spent preparing the opposition to Defendants' summary judgment motion.

## VII. DEFENDANTS' MOTION TO STRIKE DECLARATIONS IN SUPPORT OF PLAINTIFFS' REPLY

Defendants filed Objections to and a Request to Strike the Attorney Declarations filed in support of Plaintiffs' Reply. (Dkt. No. 701.) Defendants oppose declarations provided by Attorneys Kaye, Litt, and Weisberg (Dkt. Nos. 688, 690, 692) based on these declarations' length and inclusion of legal argument. Specifically, Defendants argue that Attorneys Litt, Weisberg, and Kaye proffer improper legal arguments addressing Mr. Bruning's opinions. As this Court strikes Mr. Bruning's legal opinions, this Court similarly strikes Plaintiffs' declarations addressing the legal opinions in the Bruning declaration. (Litt Reply Decl. ¶¶ 3, 4, 5, 6, 17, 25; Kaye Reply Decl. ¶¶ 10, 11.) These legal opinions violate this Court's Local Rules 7–7 and 11–6 and are unnecessary and unhelpful. In the declarations supporting Plaintiffs' reply, the Court considers only those statements based on the personal knowledge of the declarants.

---

11. Mr. Bruning's declaration does not provide consistent section numbering. For additional clarity, the Court is referring to the first Section 4, which begins on page 7 of the declaration.

## VIII. CONCLUSION

The Court GRANTS the Plaintiffs' Motion for Attorneys' Fees. Plaintiffs' fee for counsel's success on § 1983 claims is $239,744.04 paid pursuant to § 1988, with $9,500 of this amount paid as a contribution from Plaintiffs' judgment. Plaintiffs fee pursuant to § 52.1 is $5,138,430.62.[12] The total fee award is 5,378,174.66 ($9,500 contributed from Plaintiffs' judgment).

Plaintiffs' counsel may file a renewed application to tax costs with the Clerk of this Court no later than January 12, 2015.

The Court GRANTS Plaintiffs' Motion to Strike Portions of the Declaration of Expert Robert M. Bruning. (Dkt. No. 691.) The Court also GRANTS the Defendants' Motion to Strike and strikes portions of the Plaintiffs' declarations offered in support of Plaintiffs' reply. (Dkt. No. 701.)

**IT IS SO ORDERED.**

12. Plaintiffs' requested amount $5,222,909.72 less $84,479.10 for reductions based on Plaintiffs' opposition to Defendants' summary judgment motion.